CARL JASPERSEN, d.b.a. WILLMAR BLOCK AND TILE COMPANY, v. COMMISSIONER OF TAXATION.

218 N. W. 2d 463.

May 17, 1974—No. 44366.

---

*Hulstrand, Anderson & Larson* and *James F. Marrin,* for relator.

*Warren Spannaus,* Attorney General, and *Gerald Grieman,* Special Assistant Attorney General, for respondent.

Heard before MacLaughlin, Yetka, and McRae, JJ., and considered and decided by the court.

MACLAUGHLIN, JUSTICE.

Certiorari to review a decision of the Tax Court which affirmed a determination of the commissioner of taxation assessing a use tax against relator of $389.60, together with interest of $43.02, with respect to certain personal property purchased by relator from August 1, 1967, through December 31, 1968. The issue is whether the personal property involved is exempt from the use tax under Minn. St. 1967, § 297A.25, subd. 1 (h). We affirm the conclusion of the Tax Court that the property is not exempt from the use tax.

Relator, Carl Jaspersen, is the sole proprietor of a business in Willmar, Minnesota, known as the Willmar Block and Tile Company. Among other things, the business manufactures and sells field drainage tile. In the manufacture of field drainage tile, relator uses devices known as a hydro tile machine and a siler machine, both apparently operated in a similar manner. A cement mixture is propelled into the machine from a conveyor belt and enters a cylindrical chamber called a jacket, in which the tile are molded. Since the machine makes tile of different diameters, it is necessary to adjust the size of the jacket to the

desired diameter. This adjustment is made by a part called a ring, which is bolted to the machine. One ring fits over the top of the jacket and another fits over the bottom. A spinner device moves up and down between the two rings packing the cement against the inside of the jacket and putting a smooth finish on the inside of the newly packed tile. The spinner device includes a part called a cheek, which as it spins around packs the cement against the inside of the jacket, forming the hollow core, and a polisher located underneath the cheek, which completes the shaping of the inside of the tile and puts a smooth finish on it. The size of the tile being manufactured determines which polishers, cheeks, and rings are used.

The polishers, cheeks, and rings must be replaced at a relatively rapid rate. A pair of rings will last about a week, during which relator can make about 20,000 feet of tile. A polisher is replaced in about 3 days, after making 10,000 to 12,000 feet of tile. A new pair of cheeks is ordinarily used each day.

When the parts are worn out, they are scrapped. A polisher costs $19.20, a ring costs $22, and cheeks cost 90 cents each. Except for a few stray particles which become attached to the tile incidental to the manufacturing process, none of the items become a part of the finished tile.

The polishers, cheeks, and rings are purchased in a variety of sizes from sources outside of Minnesota, and the sales price is subject to the Minnesota use tax[1] unless the items involved are exempt under the statute.

The pertinent statute, § 297A.25, subd. 1(h), provides that the following are exempt from the use tax:

---

[1] Minn. St. 1967, § 297A.14, provides in relevant part: "For the privilege of using, storing or consuming in Minnesota tangible personal property, * * * there is hereby imposed on every person in this state a use tax at the rate of three percent of the sales price of sales at retail * * * unless [the standard sales tax] was paid on said sales price." The use tax was increased to 4 percent in 1971. Ex. Sess. L. 1971, c. 31, art. I, § 4.

"The gross receipts from the sale of and the storage, use, or consumption of all *materials * * * used or consumed in* agricultural or *industrial production of personal property intended to be sold ultimately at retail,* whether or not the item so used becomes an ingredient or constituent part of the property produced. Such production shall include, but is not limited to, production of any tangible personal property * * *. * * * *Machinery, equipment,* implements, tools, *accessories,* appliances, contrivances, furniture and fixtures *used in such production* and fuel, electricity, gas or steam used for space heating or lighting, *are not included within this exemption.*" [2] (Italics supplied.)

Relator contends that the polishers, cheeks, and rings used in the field tile-making machines are exempt from taxation because they are "materials * * * used or consumed in * * * industrial production of personal property intended to be sold ultimately at retail." Respondent, the commissioner of taxation, argues that the polishers, cheeks, and rings are not exempt because they fall within the exclusion to the exemption found at the end of subd. 1(h) for "machinery, equipment * * * [or] accessories * * * used in such production * * *."

Relator relies entirely on Midwestern Press, Inc. v. Commr. of Taxation, 295 Minn. 59, 203 N. W. 2d 344 (1972). In that case, we affirmed a decision of the Tax Court which held that lithographic plates used by a commercial printer were exempt from the sales tax under subd. 1(h). The lithographic plates involved were made of extremely thin sheets of aluminum, were

---

[2] In 1973, the last sentence of Minn. St. 1967, § 297A.25, subd. 1(h), was amended to read as follows: "Machinery, equipment, implements, tools, accessories, appliances, contrivances, furniture and fixtures, used in such production and fuel, electricity, gas or steam used for space heating or lighting, are not included within this exemption; *however, accessory tools, equipment and other short lived items, which are separate detachable units used in producing a direct effect upon the product, where such items have an ordinary useful life of less than 12 months, are included within the exemption provided herein.*" (The new language is italicized.) L. 1973, c. 650, art. XIII, § 2.

quickly made useless by oxidation and the printing process itself, and were for the most part unalterable once received from the manufacturer. We observed that the Tax Court was correct in finding that "these lithographic plates, which are manufactured and used only for the job for which they are prepared and are worthless after the job is completed, except in the rare cases where there is a rerun, are, for all practical purposes, consumed in completing the job." 295 Minn. 64, 203 N. W. 2d 347. We remarked that the tax commissioner's contention that once the plates were attached to the printing press they became part of the machinery and therefore excluded from the exemption "might be tenable if the plates were usable for more than the one job for which they were ordered." We concluded that while there is no comprehensive test for distinguishing "materials" from "machinery, equipment, [and] implements," it was our opinion that "lithographic plates which are custom-made for a particular job run, are usable for only a limited number of impressions, and have value only as scrap at the conclusion of the run are not machinery within the meaning of subd. 1(h)." Ibid.

Relator argues that the items in this case, as in the Midwestern case, were used only for the particular job for which they were prepared and were discarded as junk upon the completion of the job. We find no support for that contention in the record, and to the contrary, the Tax Court found:

"* * * [T]he cheeks, polishers and rings are a part of the machine and can be used for any tile of the specific size required * * *. * * *

"* * * [T]he 4000 feet of tile produced in one day [by one set of cheeks] can be sold to various consumers, and almost identical items are produced and reproduced daily. The product is very different from the product produced by a lithographic plate. The lithographic plate is a unique item and represents more of a service as opposed to a product such as the cheeks, polishers and rings.

* * * * *

"* * * We would be stretching the imagination to say that the cheeks, polishers, rings, do not constitute machinery, equipment, implements * * * used in production."

Decisions of the Tax Court are to be sustained if supported by reasonable evidence. Oliver Iron Min. Co. v. Commr. of Taxation, 247 Minn. 6, 76 N. W. 2d 107 (1956). The claim of relator that the polishers, cheeks, and rings were used only for the job for which they were prepared and then discarded upon completion of the job was rejected by the Tax Court when it stated that one set of polishers, cheeks, and rings would make a substantial amount of tile which could be sold to several different consumers. The record amply supports that conclusion, and we accept it as a fact. Furthermore, the fact that the parts involved were rendered worthless in a relatively short time is not determinative of their exemption status under the statute as written at the time of these purchases. In Midwestern, the lithographic plates were consumed rapidly. However, the thrust of the Midwestern decision was the limited and nonrepetitive function of the plates rather than their useful life. In that case, we placed considerable emphasis on the fact that the lithographic plates were specially produced to do a specific job for a specific customer and were worthless after that job was completed. In this case, the polishers, cheeks, and rings, while rendered useless in a short time, can be used to make a large number of field tile which can be sold to several different consumers.

Since there is ample evidence to support the decision of the Tax Court that the polishers, cheeks, and rings are "machinery, equipment, [or] accessories" used in industrial production, we must affirm its decision that the items are not exempt from the use tax.

Affirmed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.